IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Baird Montgomery,<br><br>                    Plaintiff,<br><br>    vs.<br><br>RJ O'Brien & Associates, LLC and<br>Steven S. Andrews,<br><br>                    Defendants. | Civil Action No. 6:12-141-TMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer the case to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) (doc. 5). The plaintiff is proceeding *pro se*. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) DSC, all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

On February 9, 2012, the defendants filed a motion to dismiss or transfer case. On February 27, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion to dismiss procedure and the possible consequences if he failed to adequately respond to the motion. After receiving an extension of time, the plaintiff filed his response on May 2, 2012. The defendants filed a reply on May 7, 2012, and the plaintiff filed a sur-reply on May 18, 2012.

## BACKGROUND

The plaintiff was, at all times relevant to this action, a professional commodity trader who owned and operated Montgomery Commodities LLC, a Guaranteed Introducing

Broker ("GIB").[1] Defendant R.J. O'Brien & Associates, LLC ("RJO") is a futures commission merchant (commodity broker), registered with the Commodity Futures Trading Commission ("CFTC").[2] It is a member of the National Futures Association ("NFA").[3] By virtue of its status as a clearing firm, RJO is permitted to execute trades on various contract markets (commodity exchanges) on behalf of its own clients and clients of other firms.[4] The defendant RJO's principle place of business is Chicago, Illinois, and it maintains no branch offices in the State of South Carolina (Andrews dec. ¶¶ 2-4). Defendant Steven Andrews was the Vice President of Compliance of defendant RJO and an Associate Member of the NFA. He resides in Chicago and is presently employed at Merrill Lynch Pierce Fenner & Smith (Andrews decl. ¶ 1).

Between 1999 and 2007, Montgomery Commodities introduced client orders to RJO for execution on various exchanges. At all relevant times, the plaintiff was an Associate Member and Montgomery Commodities was a Member of the NFA (Andrews decl. ¶¶ 5-6). In December 2009, when the plaintiff's company no longer introduced

---

[1] An introducing broker "solicit[s] or accept[s] orders for the purchase or sale of any commodity for future delivery on an exchange who does not accept any money, securities, or property to margin, guarantee, or secure any trades or contracts that result therefrom." http://cftc.gov/ConsumerProtection/EducationCenter/CFTCGlossary/glossary_ijk. A Guaranteed Introducing Broker is "an introducing broker that has entered into a guarantee agreement with a futures commission merchant (FCM), whereby the FCM agrees to be jointly and severally liable for all of the introducing broker's obligations under the Commodity Exchange Act. By entering into the agreement, the introducing broker is relieved from the necessity of raising its own capital to satisfy minimum financial requirements." http://cftc.gov/ConsumerProtection/EducationCenter/CFTCGlossary/glossary_g

[2] Like the Securities and Exchange Commission for the securities industry, the CFTC has been designated by Congress to regulate the futures industry. *See* 7 U.S.C. § 1, *et seq*.

[3] Like the Financial Industry Regulatory Authority ("FINRA"), the NFA is an industry self-regulatory organization that has been designated to discharge certain regulatory functions. *See* 7 U.S.C. § 21.

[4] All trades of a non-clearing firm, such as Montgomery Commodities, must be processed and eventually settled through a clearing firm, such as RJO. *See* http://cftc.gov/ConsumerProtection/EducationCenter/CFTCGlossary/glossary_c (defining "clearing organization" as "An entity through which futures and other derivative transactions are cleared and settled. It is also charged with assuring the proper conduct of each contract's delivery procedures and the adequate financing of trading.").

business to the defendant, NFA issued a complaint alleging that, while at RJO, the plaintiff had been allocating orders in violation of NFA Rules. Specifically, NFA alleged that the plaintiff placed multiple orders with RJO, waited to see if the trades would be profitable, and then – post-execution – allocated the profitable trades to his own personal accounts (Andrews decl., Ex. A ¶ 36). By entering trades in this manner, the plaintiff was able to profit personally while the clients for whom he traded suffered unwarranted losses (Andrews decl. ¶ 8, Ex. A ¶ 36). The NFA also alleged that the plaintiff had engaged in the same, or similar, illegal practices between 2007 and 2009 while introducing client orders to Cadent Financial Services LLC ("Cadent"), a futures commission merchant and a clearing firm with its principle place of business in Chicago, Illinois (Andrews decl. ¶¶ 7-9, Ex. A). The plaintiff ultimately settled the NFA complaint, accepting sanctions for the conduct alleged (Andrews decl. ¶¶ 10-11, Ex. B, C).

Upon further investigation, both RJO and Cadent determined that it was appropriate to make restitution to certain affected clients and former clients introduced by the plaintiff (Andrews decl. ¶¶ 12-13, Ex. D). In order to provide the appropriate refunds, Mr. Andrews, on behalf of RJO, examined the accounts introduced by Montgomery Commodities and those accounts in which the plaintiff had an interest. Mr. Andrews reached the same conclusion reached by the NFA and Cadent – the plaintiff had systematically defrauded their clients (Andrews decl. ¶¶ 14-15).

In his investigation, Mr. Andrews discovered that RJO Account No. xxx-x9157, a personal trading account opened by the plaintiff in January 1999, had benefitted from the plaintiff's wrongdoing. That account was subject to a Customer Agreement, signed by the plaintiff, that provides, in pertinent part:

> All transactions by RJO on Customer's behalf shall be subject
> to the constitution, regulations, customs and interpretations of
> each exchange or market . . . on which the trades are executed,
> and to all applicable governmental regulations.

It also provides:

> . . . Customer agrees to hold RJO, its principles, officers, directors, employees, its affiliates, and agents harmless with respect to any and all losses sustained by the latter resulting from the Customer's account(s), or any related activity, and to indemnify RJO for all costs incurred, including reasonable attorney's fees.

Finally, the Account Agreement provides:

> Customer agrees that all disputes, claims, actions or proceedings arising directly, indirectly, or otherwise in connection with, out of, related to or from this Agreement shall be litigated or arbitrated only in a court or arbitration forum located in Chicago, Illinois, unless otherwise directed by RJO. Customer consents and submits to the jurisdiction of any state or federal court or arbitration forum located within the City of Chicago.

(Andrews decl. ¶¶ 16-17, Ex. E).

In addition, to induce the defendant RJO to clear its trades, Montgomery Commodities entered into a Clearing & Guarantee Agreement ("Clearing Agreement") which was personally guaranteed by the plaintiff. Among other things, that Clearing Agreement provides: "Broker [Montgomery Commodities] further warrants that it is familiar with the Commodity Exchange Act, the rules and regulations of the CFTC, the NFA and of the exchanges on which customer trades are executed. It further warrants that it will conduct its business in accordance therewith. "That Clearing Agreement requires Montgomery Commodities and, by his personal guarantee, the plaintiff to indemnify RJO and its "affiliates, officers, directors, agents, and servants from all claims, losses, damages, and costs (including attorneys' fees) incurred by [RJO] and resulting from any breach of [the Clearing Agreement] or from any culpable conduct (alleged or actual) toward any third party . . ." The Clearing Agreement additionally provides:

> This Agreement shall be governed by the laws of the State of Illinois, without regard to principles of conflicts of laws. The

4

> parties agree to submit any dispute arising out of this Agreement to the jurisdiction of, and consent to the jurisdiction venue (sic) in, state or federal court in Chicago, Illinois . . . Broker waives any objection to venue that Broker may have pursuant to the doctrine of forum non conveniens.

(Andrews decl. ¶¶ 18-19, Ex. F).

Another account used in the fraudulent allocation of trades by the plaintiff was RJO Account No. xxx-x0000, a corporate account in the name eProfits.com, Inc. That account was both traded by and personally guaranteed by the plaintiff. The Account Agreement, executed by the plaintiff in 2003, requires that: "All transactions handled by RJO on Customer's behalf shall be subject to the constitution, regulations, customers and interpretations of each exchange or market . . . on which the trades are executed, and to all applicable governmental regulations." The Agreement also provides:

> Customer agrees that all disputes, claims, actions or proceedings arising directly, indirectly, or otherwise in connection with, out of, related to or from this Agreement shall be litigated or arbitrated only in a court or arbitration forum located in Chicago, Illinois, unless otherwise agreed by RJO. Customer consents and submits to the jurisdiction of any state or federal court or arbitration forum located within the Northern District of Illinois.

(Andrews decl. ¶¶ 20-21, Ex. G).

In 2006, the plaintiff opened another account that was involved in his fraudulent scheme, RJO Account No. xxx-x0000, a partnership account in the name of eProfits Diversified Hard Asset Fund, LP, of which he was both the General Partner and personal guarantor. Again, the Account Agreement the plaintiff executed required that his trading be in compliance with exchange and "governmental regulations" and contains the following provision:

> Customer agrees that all disputes, claims, actions or proceedings arising directly, indirectly, or otherwise in

5

> connection with, out of, related to or from this agreement shall be litigated or arbitrated only in a court or arbitration forum located in Chicago, Illinois, unless otherwise agreed by RJO. Customer consents and submits to the jurisdiction of any state or federal court or arbitration forum located within the Northern District of Illinois.

(Andrews decl. ¶¶ 22-23, Ex. H).

Mr. Andrews states in his declaration that as a direct and proximate result of the fraudulent allocation scheme undertaken by the plaintiff using these three accounts (and others) and executing the trades through defendant RJO pursuant to the Clearing Agreement between the parties, defendant RJO was obligated to, and did, refund approximately $183,000 to 30 clients and former clients introduced by Montgomery Commodities (Andrews decl. ¶ 24). The letter attached to the complaint in this lawsuit was sent by the defendants to these clients to explain the refunds (Andrews decl. ¶ 25; *see* comp. ¶ 4). In his complaint, the plaintiff alleges that the letters sent to these clients "asserted that . . . [he] engaged in improper and illegal conduct and accused him and the firm of impropriety in performing his trade or profession." He further alleges that the letters "impeached [his] honesty, integrity, virtue and reputation" and were defamatory per se (comp. ¶¶ 5-6). The plaintiff filed his complaint in the South Carolina Court of Common Pleas on December 1, 2011, and the defendants filed a notice of removal to this court on January 13, 2012, based upon the parties' diversity of citizenship.

## **APPLICABLE LAW AND ANALYSIS**

The plaintiff agreed to four separate forum selection clauses over a period of approximately seven years. Each of those forum selection clauses provides for Chicago, Illinois to be the exclusive venue. In determining whether to enforce these forum selection clauses, the court should first decide whether they are mandatory or permissive. *Albemarle Corp. v. Astrazeneca UK Ltd.*, C.A. No. 5:08-1085-MBS, 2009 WL 902348, at *3 (D.S.C. March 31, 2009) ("Before a court can assess whether a forum selection clause is

6

'unreasonable,' it must determine whether the clause is selective (*i.e.* mandatory) or permissive (*i.e.* nonmandatory).").[5] As argued by the defendants, each of the clauses that bind the plaintiff in this matter is mandatory because each requires, by clear language, that any dispute arising out of the commodity trading relationship must be litigated in Chicago, Illinois. *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) (noting that "forum-selection clause was mandatory . . . as it contained clear language stating that jurisdiction was only appropriate in Colorado, the designated forum").

The forum selection clauses at issue here specifically provide as follows:

1. In 1999, the plaintiff agreed that all disputes "shall be litigated or arbitrated only in a court or arbitration forum located in Chicago, Illinois . . . " (Andrews decl., Ex. E at p. 10).

2. Beginning that same year, the plaintiff also agreed " . . . to submit any dispute . . . to the jurisdiction of, and consent to the jurisdiction venue (sic) in, state or federal court in Chicago, Illinois . . . " (Andrews decl., Ex. F at p. 9).

3. In 2003, the plaintiff agreed that any trading dispute with the defendant RJO "shall be litigated or arbitrated only in a court or arbitration forum located in Chicago, Illinois . . . " (Andrews decl., Ex. G at p. 15).

4. In 2006, the plaintiff again agreed that any trading dispute with the defendant " . . . shall be litigated or arbitrated only in a court or arbitration forum located in Chicago, Illinois . . . " (Andrews decl., Ex. H at p. 10).

---

[5] As argued by the defendants, even as a mere guarantor of agreements containing mandatory forum selection clauses, the plaintiff is bound by them. *Swisher Int'l, Inc. v. ISA Chicago Wholesale, Inc.*, No. 3:08-cv-1179-J-32HTS, 2009 WL 1405177, at *3 (M.D. Fla. 2009) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound . . . a claim on the Guaranty is so 'closely related' to the gravamen of this dispute arising out of the Credit Agreement containing the forum selection clause that it is 'foreseeable' that all claims would travel together.") (citations omitted); *Superior Care Pharmacy, Inc. v. Medicine Shoppe Int'l, Inc.*, No. 2:10-cv-207, 2011 WL 597065, at *3 (S.D. Ohio Feb. 10, 2011) (same). The same analysis permits defendant Andrews to avail himself of the mandatory forum selection clauses. *See Allianz Ins. Co. V. Cho Yang Shipping Co., Ltd*, 131 F.Supp.2d 787, 791 (E.D. Va. 2000) (noting "closely related" non-signators may "benefit from" forum selection clause (collecting cases).

Furthermore, each forum selection clause is reasonable. *Pee Dee Health Care v. Mark Sanford*, 509 F.3d 204, 213-14 (4th Cir. 2007)("A forum-selection clause is 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'") (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)); *Tetrev v. Pride Int'l*, 444 F.Supp.2d 524, 530 n.2 (D.S.C. 2006)("A forum selection clause is generally binding and should be enforced unless the party seeking to void it can '*clearly show* that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'") (emphasis in original) (quoting *M/S Bremen*, 407 U.S. at 15).

> Forum selection clauses may be considered unreasonable if:
>
> (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

*Atlantic Floor Services, Inc. v. Wal-Mart Stores, Inc.*, 334 F.Supp.2d 875, 877 (D.S.C. 2004) (citing *M/S Bremen*, 407 U.S. at 10).

In his response to the motion, the plaintiff denies that he used his RJO trading accounts to defraud his clients (resp. at 1-7). With regard to the forum selection clauses at issue here, the plaintiff argues that the clauses in his RJO contracts "pertain[] to normal business practices," not to "a slanderous letter" (resp. at 8). The three Account Agreements each contain mandatory forum selection clauses that cover " . . . all disputes, claims, actions or proceedings arising directly, indirectly, or otherwise in connection with, out of, related to or from this Agreement . . ." As argued by the defendants, the plaintiff's defamation claim clearly arises from, is "in connection with," and/or "relates to" a "dispute" over the plaintiff's compliance, or non-compliance, with a material term of those agreements – the requirement that the plaintiff not violate applicable law. *See SeaCast of Carolinas, Inc. v. Premise Networks, Inc.*, C.A. No. 4:09-cv-186-RBH, 2009 WL 5214314, at \*3 (D.S.C.

8

Dec. 28, 2009) (finding that a broad, mandatory forum selection clause applied to certain contract-related tort claims, including slander); *see also id.* at *3 n.5, 6 (collecting cases).

With regard to the reasonableness of the forum selection clauses, the plaintiff argues that requiring him to litigate his claim in Chicago would impose a "financial hardship" on him making it "difficult, if not impossible, . . . to produce witnesses in Chicago" (resp. at 8). While "grave inconvenience or unfairness of the selected forum" is a consideration in considering whether a forum selection clause is reasonable, *see Atlantic Floor Services, Inc.,* 334 F.Supp.2d at 877, the plaintiff has not identified his witnesses, established that they are essential to his claim, demonstrated what inconvenience a Chicago venue might pose for them, or explained why their testimony could not be submitted by deposition. *See Garrett v. Gulf Stream Coach, Inc.*, C.A. No. 3:08cv792, 2009 WL 936297, at *4 (E.D. Va. April 7, 2009) ("While it would be more convenient for Plaintiffs to litigate in the Eastern District of Virginia, they failed to provide any evidence of their inability to litigate in the designated forum or that the forum selection clause, if enforced, will for all practical purposes deprive them of their day in court").

As argued by the defendants, the plaintiff agreed to four separate forum selection clauses over a period of approximately seven years. During that period, the plaintiff was a professional futures trader, owned and operated a registered Introducing Broker, and guaranteed, administered, and managed numerous other trading accounts nationwide. Agreeing to Chicago as the venue for any dispute with defendant RJO recognized the "commercial realities" of the relationship and is entirely reasonable. *Albemarle Corp. v. Astrazeneca UK Ltd*, 628 F.3d 643, 649-50 (4th Cir. 2010) (noting federal common law favoring enforcement of forum selection clauses).

"Dismissal is an appropriate procedure when faced with a valid and enforceable forum selection clause that provides the case should be brought in another forum." *Atlantic Floor Services, Inc.*, 334 F.Supp.2d at 880. *See also Baker v. Adidas America*, 335 Fed. Appx. 356, 359 (4th Cir. 2009)("The validity of a forum selection clause

9

is properly analyzed under Federal Rule of Civil Procedure 12(b)(3) . . ."). As the court found in *Sucampo Pharm., Inc. v. Astellas Pharm.*, 471 F.3d 544 (4th Cir. 2006):

> Treating a motion to dismiss based on a forum-selection clause under Rule 12(b)(3) avoids the logistic and theoretical intricacies of utilizing 12(b)(1), allows the court to freely consider evidence outside the pleadings, unlike under a 12(b)(6) motion, and is more consistent with the Supreme Court's treatment of such clauses. Accordingly, a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue.

*Id*. at 549-50 (citations omitted).

The forum selection clauses in the agreements at issue here are mandatory and reasonable and should be enforced. Accordingly, dismissal is appropriate.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motion to dismiss (doc. 5) be granted.[6]

IT IS SO RECOMMENDED.

| | |
|---|---|
| July 11, 2012 | s/ Kevin F. McDonald |
| Greenville, SC | United States Magistrate Judge |

---

[6] As this court finds the instant action should be dismissed pursuant Rule 12(b)(3), the alternative motion to transfer the case pursuant to 28 U.S.C. § 1404(a) will not be addressed.